**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

MARCO CHINCHILLA,

          Plaintiff,

          v.

GEODIS AMERICA, INC. *et al.*,

          Defendants.

Civil Action No. 23-1995 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on two motions. First is Plaintiff Marco Chinchilla's ("Chinchilla") Motion to Remand this action to the Superior Court of New Jersey, Law Division, Middlesex County. (ECF No. 11.) Defendants Geodis Logistics, LLC ("Geodis Logistics"), Geodis America, Inc. ("Geodis America"), and Geodis USA, LLC ("Geodis USA") (collectively, the "Geodis Defendants") opposed the motion (ECF No. 15), and Chinchilla did not reply. Next is the Geodis Defendants' Motion to Dismiss Chinchilla's Complaint. (ECF No. 5.) Chinchilla opposed (ECF No. 8), and the Geodis Defendants replied (ECF No. 9).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Chinchilla's Motion to Remand and grants the Geodis Defendants' Motion to Dismiss.

I.      **BACKGROUND**[1]

This action arises out of alleged violations of the New Jersey Law Against Discrimination

("NJLAD"), N.J. Stat. Ann. § 10:5-12 *et seq.* and the Conscientious Employee Protection Act

("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq.* (*See generally* Compl., ECF No. 1-1.) Chinchilla is a

resident of Pennsylvania and a former employee of Geodis Logistics.[2] (Compl. ¶¶ 1, 29.) The

Geodis Defendants, conversely, are citizens of Delaware and Tennessee.[3] (*Id.* ¶¶ 22-23.)

According to the Complaint, Chinchilla is a 62-year-old Hispanic male. (*Id.* ¶ 8.) Geodis

Logistics, a Limited Liability Company with campuses in New Jersey and Pennsylvania, hired

Chinchilla in December 2014 to work as a Senior Operations Manager at its Monroe, New Jersey

Campus ("New Jersey Campus"). (*Id.* ¶¶ 9-10.) Shortly after, Chinchilla was assigned to Geodis

Defendants' Vineyard Vines Account. (*Id.*) Due to Chinchilla's success at work, sometime later,

the Geodis Defendants asked to temporarily transfer Chinchilla to their Kutztown, Pennsylvania

Campus ("Pennsylvania Campus"), to manage its Everlane Account—which Chinchilla

characterizes as a "major account." (*Id.* ¶ 11.) Along with the request for a temporary relocation,

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Chinchilla alleges that he was employed by the Geodis Defendants but does not specifically plead that the Geodis Defendants were joint employers. (*See generally* Compl.) The Geodis Defendants indicate that Chinchilla was only employed by Geodis Logistics and that he did not work for Geodis USA and Geodis America. (Geodis Defs.' Moving Br. 3, ECF No. 5-1.) Because this issue does not impact the Court's ruling herein, the Court refers to Chinchilla's employer collectively as the Geodis Defendants.

[3] Geodis America is incorporated in the state of Delaware, and its headquarters is in Tennessee. (*Id.* ¶ 22.) Geodis Logistics is a limited liability company, whose sole member is Ozburn-Hessey Holding Company, LLC. (*Id.*) Ozburn-Hessey Holding Company, LLC is a limited liability holding company, whose sole member is OHH Acquisition, LLC, a limited liability company, of which Geodis America is the sole member. (*Id.*) Geodis Overseas, Inc. is incorporated in Delaware and is not affiliated with the Geodis Defendants. (*Id.* ¶¶ 24-25.)

Chinchilla was promised a promotion to Director of Operations. (*Id.* ¶ 12.) Chinchilla agreed to the transfer. (*Id.* ¶ 11.)

Despite these initial successes, the narrative took a stark turn when Chinchilla was transferred to the Pennsylvania Campus. (*See id.* ¶¶ 14-29.) It all began when Chinchilla attended an Operational Leadership Meeting for the Everlane Account in November 2020. (*Id.* ¶ 14.) During this meeting, Chinchilla alleges that he was "the target of several discriminatory comments relating to his age." (*Id.* ¶ 15.) For instance, the Acting Director of Operations for the Geodis Defendants told the Operations Assistant Manager, "[t]o slow down, you know [Chinchilla] is old. He can't keep up." (*Id.*) Chinchilla subsequently reported this incident to Human Resources ("HR"), which, in turn, prompted HR to investigate Chinchilla's allegations. (*Id.* ¶¶ 16-17.)

Chinchilla alleges that the Geodis Defendants began treating him differently while HR was investigating the incident. (*Id.*) For example, Chinchilla avers that: (1) he stopped being invited to meetings he would typically attend (*id.* ¶ 18); (2) communications between him and other managers began to deteriorate (*id.* ¶ 24); (3) relationships with other employees started to sour (*id.* ¶ 23); and (4) he started to receive remarks concerning his loyalty to the team and was informed of the consequences of not being loyal (*id.*).

In February 2021, Chinchilla had his first annual performance review meeting since reporting the allegations to HR. (*Id.* ¶ 19.) During the meeting, he was informed that his performance at the Pennsylvania Campus was "poor" and required his placement on an Individual Development Plan ("IDP"). (*Id.*) The IDP identified three core competencies, and Chinchilla was

encouraged to improve them.[4] (Ex. A to Compl. ("Geodis IDP"), *17[5], ECF No. 1-1.) In addition to being placed on an IDP, Chinchilla was informed that he would not receive a pay increase or the Director of Operations position he applied for and was promised. (Compl. ¶¶ 20-21.) This was the first time in Chinchilla's seven years of employment with the Geodis Defendants that he had received a poor performance review. (*Id.* ¶ 22.)

Things did not change for the better after Chinchilla was placed on an IDP. Chinchilla was first removed from the Everlane Account in June 2021. (*Id.* ¶ 25.) Shortly after, Chinchilla was transferred back to the New Jersey Campus, where he was initially hired. (*Id.* ¶ 26.) At some point between June 2021 and January 2022, Chinchilla was brought back to the Pennsylvania Campus. (*Id.* ¶ 27.) Upon return to the Pennsylvania Campus, Chinchilla found the work environment to be "extremely hostile." (*Id.*) Not too long after returning to the Pennsylvania Campus, in January 2022, Chinchilla met with his supervisor for a second annual review since reporting the incident to HR and was informed for the second time that he would not be promoted to Director of Operations. (*Id.* ¶¶ 27-28.) Three months later, Chinchilla resigned "because the work environment had taken its toll on him." (*Id.* ¶ 29.)

Following his resignation, Chinchilla filed this lawsuit on February 20, 2023 in the New Jersey Superior Court, Middlesex County, asserting four causes of actions against the Geodis Defendants: (1) discrimination in violation of NJLAD (Count I); (2) retaliation in violation of NJLAD (Count II); (3) violation of CEPA (Count III); and (4) constructive discharge in violation of NJLAD (Count IV). (*See generally* Compl.) On April 7, 2023, Defendants removed this

---

[4] Specifically, some examples that the Geodis Defendants cited as reasons that Chinchilla needed an IDP were that: (1) he did not hold his team accountable; (2) he did not respond to emails promptly; (3) he did not send accurate information; and (4) he did not understand his department.

[5] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

action to federal court, invoking the Court's diversity jurisdiction. (*See* Notice of Removal, ECF No. 1.) The Geodis Defendants filed a Motion to Dismiss Chinchilla's Complaint a week later. (ECF No. 5.) After the Court inquired into the parties' citizenship to establish complete diversity (ECF No. 10), Chinchilla filed a Motion to Remand, asserting that this Court lacks subject matter jurisdiction because the Geodis Defendants failed to satisfy the amount in controversy requirement. (Chinchilla's Moving Br. *4, ECF No. 11-1.)

## II.   **LEGAL STANDARDS**

### A.   **Motion to Remand Standard**

Federal courts are courts of limited jurisdiction, meaning that for a federal court to hear a case, it must have jurisdiction over the issue, such as diversity or federal question jurisdiction. *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983). The federal removal statute, 28 U.S.C. § 1441, states that unless "otherwise expressly provided by . . . Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A plaintiff can move to remand a case removed to a federal court where the court lacks subject matter jurisdiction or removal was otherwise improper. *Id.* § 1447(c).

The Third Circuit has held that the removal statute "is to be strictly construed against removal" to honor Congressional intent. *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." (citation omitted)). Thus, a district court has the authority to remand

a case that was removed to federal court if "at any time before final judgment it appears the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c). To defeat a motion to remand, a defendant bears the burden of demonstrating the federal court's jurisdiction. *Abels*, 770 F.2d at 29 (citing *Pullman Co v. Jenkins*, 305 U.S. 534, 537 (1939)).

**B.     Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 8(a)(2)[6] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant was unlawfully harmed. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim

---

[6] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   **DISCUSSION**

Although the Geodis Defendants filed their Motion to Dismiss before Chinchilla's Motion to Remand, the Court will begin by addressing Chinchilla's Motion to Remand since it invokes questions as to this Court's jurisdiction. *See Newton v. S. Jersey Paper Prods. Co.*, No. 19-17289, 2020 WL 2059954, at *2 (D.N.J. Apr. 29, 2020) ("Though [d]efendant's motion to dismiss came earlier in time than [p]laintiff's motion to remand, the Court is obligated to consider [p]laintiff's motion to remand first." (citation omitted)); *Christ Hosp. v. Loc. 1102 Health & Ben. Fund*, No. 11-5081, 2011 WL 5042062, at *2 (D.N.J. Oct. 24, 2011) ("As the motion to remand affects this Court's subject matter jurisdiction, the Court will treat this motion first.").

### A.   **Motion to Remand**

Chinchilla moves to remand on the sole theory that this Court lacks diversity jurisdiction because the jurisdiction threshold of $75,000 is not met. (Chinchilla's Moving Br. *4-5.) Chinchilla argues that the Geodis Defendants provide no proof that the amount in controversy was met. (*Id.* at *4.) In response, the Geodis Defendants contend that the jurisdiction threshold is met based on Chinchilla's demand for an award of damages. (Geodis Defs.' Opp'n Br. 17, ECF No. 15-1.) Specifically, to establish that the jurisdictional threshold was met, the Geodis Defendants provide evidence of Chinchilla's salary at resignation and case law concerning Chinchilla's demand for damages. (*See generally* Geodis Defs.' Opp'n Br.) As the parties do not dispute that the controversy involves diversity of citizenship or that removal was timely, the sole issue before the Court is whether the Geodis Defendants demonstrated by a preponderance

of the evidence that the jurisdiction threshold was met at the time of removal. The Court finds that the Geodis Defendants have done so.

Under 28 U.S.C. § 1332, a district court has diversity subject-matter jurisdiction to hear "civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." "[W]hen a case is removed to federal court, the removing defendant bears the burden of establishing subject-matter jurisdiction." *Martin v. Wal-Mart Stores, Inc.*, 709 F. Supp. 2d 345, 347 (D.N.J. 2010) (citation omitted). "The notice of removal is the defendant's opportunity to persuade the court of its subject-matter jurisdiction." *Id.* (citation omitted). When removing a case based on diversity jurisdiction, a "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" at the time of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 663 (W.D. Pa. 2012) ("In removal cases, the amount in controversy analysis begins with a reading of the complaint filed in the state court as of the time the notice of removal was filed." (citation omitted)).

On December 7, 2011, the President signed the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011). This Act, which went into effect on January 6, 2012, addresses how to measure the amount in controversy when the Complaint is silent on the quantum of damages sought. *Id.* Specifically, in circumstances, such as here, where the State does not permit a plaintiff to request a specific amount of damages in the complaint, *see* N.J. Ct. R. 4:5-2, and the amount in controversy is in dispute, the preponderance of the evidence standard applies. *See Dart*, 574 U.S. at 88 (explaining that under § 1446(c)(2)(B), "when a defendant's assertion of the amount in controversy is challenged[,] . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-

controversy requirement has been satisfied"); *see also La Stella v. Aquion, Inc.*, No. 19-10082, 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020) (explaining that the "preponderance of evidence standard applies whenever a plaintiff disputes jurisdiction."). Preponderance of the evidence means "proof to a reasonable probability that jurisdiction exists." *Frederico v. Home Depot*, 507 F.3d 188, 196 n.6 (3d Cir. 2007). The amount in controversy is measured "'not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

When a plaintiff has challenged the removal of his complaint based on the amount in controversy requirement, a federal court determines the amount in controversy by starting with the complaint itself. *See Angus*, 989 F.2d at 145 ("The general federal rule is to decide the amount in controversy from the complaint itself." (citation omitted)). When reading the complaint, "the [c]ourt must look at [p]laintiff's 'actual legal claims.'" *Young v. Bloomingdale's Short Hills*, No. 21-10764, 2021 WL 4170025, at *3 (D.N.J. Sept. 14, 2021) (citations omitted). When a complaint is silent on the specific amount of damages sought, the court may also consider the notice of removal and the parties' submissions related to the motion to remand. *See See Hamm*, 908 F. Supp. at 663 (citation omitted); *see also USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003) (stating that jurisdictional facts required to support removal may be found in later-filed affidavits).

Here, the Court begins this inquiry by evaluating Chinchilla's legal claims. Chinchilla brings claims under NJLAD and CEPA. (Compl. ¶¶ 30-49.) Under NJLAD, back pay and benefits through trial, front pay and benefits from the date of trial, emotional distress damages, punitive damages, and attorneys' fees are recoverable. N.J. Stat. Ann. § 10:5-13(b). Similarly,

under CEPA, lost wages and benefits, emotional distress damages, punitive damages, and attorneys' fees are recoverable. N.J. Stat. Ann. § 34:19-13. As Chinchilla's Complaint does not request a specific amount of damages because of state law limitations, he does request, among other[7] things, relief in the form of back pay, front pay, emotional distress damages, punitive damages, and attorneys' fees, which all are recoverable under both NJLAD and CEPA. (Compl. *12-15.)

The Court finds that Chinchilla's request for an award of back pay alone provides a reasonable probability that the amount in controversy requirement is satisfied. The Geodis Defendants offer evidence indicating that Chinchilla's annual salary was $138,578, in April 2022, when he resigned. (Decl. of Ben Bodzy ["Bodzy Decl."], Ex. B ¶ 4, ECF No. 15-2.) As NJLAD and CEPA allow for the recovery of back pay, when the Geodis Defendants removed the case to this Court in April 2023, Chinchilla was presumably[8] unemployed for approximately twelve months and could have accrued back pay for those months. (Notice of Removal *8.) At that point, the amount in controversy would have been $138,578. This alone is sufficient to plausibly establish the amount in controversy threshold at the time of removal.

To be sure, the Geodis Defendants can establish a reasonable probability that the amount in controversy was met even if the back pay based on Chinchilla's salary did not meet the jurisdictional threshold. Specifically, Chinchilla also seeks punitive damages and attorneys' fees, both of which, collectively, could reasonably result in a damage award over $75,000. *See Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 316988, at *5 (D.N.J. Jan. 27, 2014)

---

[7] Chinchilla also seeks relief in the form of a declaratory judgment, injunction, and reinstatement. (Compl. *12-15.)

[8] Chinchilla submitted no evidence that he secured subsequent employment which might mitigate his back pay award were he to succeed at trial.

(holding that jurisdictional threshold was met based on plaintiff's annual salary of $66,885.63 and also considering potential punitive damages and attorney's fees). If that were not enough, Chinchilla has made further demands for emotional distress damages—a claim on its own that has resulted in damages in excess of $75,000 for successful NJLAD claims. *See, e.g.*, *Cuevas v. Wentworth Grp.*, 144 A.3d 890, 909 (N.J. 2016) (affirming an award of emotional distress damages in the amount of $600,000 and $800,000); *see also Rendine v. Pantzer*, 661 A.2d 1202, 1232 (N.J. 1995) (upholding a state court verdict for emotional distress damages of $125,000). As such, the Court finds that the Geodis Defendants established by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal. The Court, accordingly, denies Chinchilla's Motion to Remand.

**B.      Motion to Dismiss**

Having determined that removal was proper, the Court turns next to the Geodis Defendants' Motion to Dismiss. The Geodis Defendants move to dismiss all four counts in Chinchilla's Complaint, arguing that each is insufficiently pled as a matter of law.

The Geodis Defendants primarily move to dismiss Chinchilla's Complaint on the basis that NJLAD and CEPA, as a matter of law, do not apply to the conduct underlying Chinchilla's claims. (*See* Geodis Defs.' Moving Br. 10-18.) Specifically, the Geodis Defendants contend that Chinchilla was not employed in New Jersey and has not sufficiently alleged that any discriminatory conduct occurred in New Jersey. (*Id.* at 10-12.) The Geodis Defendants further contend that although NJLAD and CEPA could apply to the claims of a nonresident, these claims are inapplicable to Chinchilla because he has failed to allege that New Jersey has the most significant relationship to his claims. (*Id.* at 16-18.) Unsurprisingly, Chinchilla argues to the

contrary, claiming that NJLAD and CEPA apply to him under the circumstances described in the Complaint. (*See* Chinchilla's Opp'n Br. *5, ECF No. 8.)

Whether an individual who does not work in New Jersey is entitled to assert a cause of action under NJLAD and CEPA against a New Jersey employer remains unresolved by the New Jersey Supreme Court. The New Jersey Appellate Division, however, recently offered clarity and held in *Calabotta* that an out-of-state plaintiff may be entitled to assert a claim under NJLAD and CEPA if the plaintiff can demonstrate that New Jersey has the "most significant relationship" to his or her claim. *See Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 214, 219-221 (N.J. Super. Ct. App. Div. 2019). In *Donovan*, this Court grappled with *Calabotta*'s holding. *See Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 231-234 (D.N.J. 2021) (citations omitted) (applying *Calabotta*'s framework within the federal pleading regime and holding that "to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to his claim . . ."); *see also Walters v. Safelite Fulfillment, Inc.*, No. 18-11111, 2019 WL 7343481, at *5 (D.N.J. Dec. 31, 2019) (applying *Calabotta* and finding NJLAD and CEPA claims sufficiently pled at motion to dismiss stage); *Rampersad v. Dow Jones & Co.*, No. 19-11733, 2020 WL 529212, at *4 (D.N.J. Jan. 31, 2020) (denying motion to dismiss an out-of-state plaintiff's NJLAD claim and determining that "a more fully developed factual record [was] necessary to determine whether the *Calabotta* choice-of-law principles justif[ied] applying the NJLAD to [p]laintiff's claims").

Following the guidance provided by *Donovan* and applying the *Calabotta* choice-of-law framework at the pleading stage, the Court must evaluate whether Chinchilla has asserted sufficient factual allegations in the Complaint to adequately allege NJLAD and CEPA claims. As a threshold matter, the Court must first determine whether the competing states'

laws—Pennsylvania and New Jersey—are in conflict, which is to say whether "application of the different state laws would lead to a different outcome in the case." *See Donovan*, 566 F. Supp. 3d at 231. If there is no conflict, the law of the forum state applies, but if a conflict exists, the Court proceeds to analyze which state has the most significant relationship to the dispute pursuant to Sections 6, 145, and 146 of the Restatement (Second) of Conflicts of Laws. *See id.*

      i.      *Whether the Relevant Laws of Pennsylvania and New Jersey Conflict.*

The Court finds that the relevant state laws of New Jersey and Pennsylvania conflict. First, the Court considers NJLAD and its Pennsylvania equivalent, the Pennsylvania Human Relations Act as amended, 43 P.S. § 951, *et seq.* ("PHRA"). As indicated by the Geodis Defendants, this Court has already found that NJLAD and PHRA conflict. (Geodis Defs.' Moving Br. 13 (citing *Martin v. Port Auth. Transit Corp.*, No. 09-3165, 2010 WL 1257730, at \*4 (D.N.J. Mar. 25, 2010) ("There are significant differences between the NJLAD and the PHRA.").). The critical differences between NJLAD and PHRA are: (1) NJLAD does not require exhaustion of administrative remedies before bringing suit, whereas PHRA does; (2) NJLAD allows for punitive damages, whereas PHRA does not; and (3) NJLAD allows for jury trials, whereas PHRA does not. *Martin*, 2010 WL 1257730, at \*4 (citations omitted). As such, a conflict is present because the application of each law could result in different outcomes. *See Donovan*, 566 F. Supp. 3d at 231.

Next, the Court considers whether CEPA and Pennsylvania's equivalent, the Pennsylvania Whistleblower Law, 43 P.S. §§ 1423-1424, *et seq.* ("PAWL"), conflict. The New Jersey Supreme Court has answered this question in the affirmative, explaining that the "two laws differ in: (1) scope; (2) filing period; (3) damages; and (4) right to trial by jury." *Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 105 (N.J. 2002). First, CEPA applies to private and public employers, whereas PAWL applies only to public employers. *Id.* Second, as to the filing period, CEPA permits up to

one year for a claim to be filed, whereas PAWL requires that it be filed within 180 days. *Id.* Third, CEPA allows for recovery of punitive damages, whereas PAWL does not. *Id.* Fourth and finally, CEPA allows for a jury trial, whereas PAWL does not. *Id.* Accordingly, because the application of the laws would result in a different outcome, a conflict also exists here.

Having determined that a conflict exists under the relevant state laws, the Court then proceeds to the next step of the analysis and considers how the Restatement's choice-of-law principles under Sections 6, 145, and 146 inform the "most-significant relationship test." *Donovan*, 566 F. Supp. 3d at 233; *Calabotta*, 213 A.3d at 219 (explaining that "[t]o determine whether New Jersey has the most significant relationship, [courts] consider [S]ections 145 and 146 [of the Restatement], which provide general rules for tort actions, as well as [S]ection 6, which outlines universal principles for choice-of-law-issues").

ii.     *Whether New Jersey Has the "Most Significant Relationship" to the Claims.*

At the motion to dismiss stage, the Court finds that Chinchilla has not alleged sufficient contacts to the State of New Jersey for his NJLAD and CEPA claims to proceed to discovery.[9]

The Geodis Defendants posit that Chinchilla's allegations suggest that "Pennsylvania has the most significant relationship to the claims." (Geodis Defs.' Moving Br. 15.) The Geodis Defendants argue that although Chinchilla alleges that he was hired to work at the New Jersey Campus, he fails to allege any "discriminatory, retaliatory, or harassing behavior that occurred in New Jersey prior to th[e] transfer to Pennsylvania." (*Id.* at 17.) In bolstering that argument, the Geodis Defendants point to Chinchilla's IDP, which indicates it was rendered out of the "Eastern PA" location. (*Id.*) Chinchilla disputes the Geodis Defendants' assertion by stating, for the first

---

[9] Chinchilla's NJLAD claims, as alleged, are predicated upon the same facts as Chinchilla's CEPA claim. The Court, therefore, considers those claims together in assessing the Restatement factors.

time, that while working at the Pennsylvania Campus, he remained under the supervision and control of the New Jersey Campus. (Chinchilla's Opp'n Br. *5.)

Section 146 of the Restatement sets forth a presumption that "the local law of the state where the injury occurred" will apply unless "some other state has a more significant relationship . . . ." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971). As such, the laws of the State of Pennsylvania are presumed to apply to this matter because it is the state where the injury was felt by Chinchilla, a Pennsylvania resident and employee, unless New Jersey has a more significant relationship to the claims. The Court now turns to the factors outlined in Sections 145 and 6 to determine whether New Jersey has a more significant relationship to Chinchilla's claims.

### a. Section 145 Factors

Section 145 of the Restatement identifies contacts pertinent to assessing the most significant relationship, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145(2).

Here, the Court finds that the Section 145 factors weigh against the application of New Jersey law. First, Chinchilla's injury, upon which his NJLAD and CEPA claims are based, occurred in Pennsylvania, and the alleged unlawful action that caused his injury occurred while he was employed at the Pennsylvania Campus. (*See* Compl. ¶¶ 14-29.) Next, Chinchilla is a Pennsylvania resident (*id.* ¶ 1), and the Geodis Defendants are citizens of Delaware and Tennessee (*id.* ¶¶ 22, 23). Chinchilla fails to allege any facts suggesting he was a New Jersey resident during the alleged unlawful conduct or, as the Geodis Defendants put it, experienced discrimination or retaliation while working at the New Jersey Campus. (Geodis Defs.' Moving Br. 17.) Finally,

concerning the last factor, the parties disagree on the scope of the relationship. For the first time, in Chinchilla's opposition, he alleges that the decision to take "any action . . . with respect to [him] had to go through [the] New Jersey [Campus]." (Chinchilla's Opp'n Br. *5.) The Geodis Defendants dispute his assertion by highlighting that the Complaint is devoid of any allegations of control and supervision of Chinchilla by and through the New Jersey Campus. (Geodis Defs.' Rep. Br. 2-3.)

The Geodis Defendants correctly observe that Chinchilla fails to allege in his Complaint where his supervisors were based or located; rather, he alleges in a conclusory fashion in his briefing that the New Jersey Campus supervised his work.[10] (Chinchilla's Opp'n Br. *5.) Although Chinchilla contends that he reported certain allegations of misconduct to New Jersey-based personnel (*see, e.g.*, *id.* at *3), and he was in constant communication with and operated under the guidance of New Jersey managers (*id.* at *4), the large majority of Chinchilla's allegations under NJLAD and CEPA are predicated on events and/or conduct occurring outside of New Jersey by non-New Jersey individuals or by individuals whose location is unspecified. (*See, e.g.*, Compl. ¶¶ 14-15 (alleging that the beginning of the targeted discriminatory comments about his age was when he attended an Operational Leadership Meeting at an unspecified location while working at the Pennsylvania Campus). *See Donovan*, 566 F. Supp. 3d at 236 (explaining that the fact that "[p]laintiff worked in New Jersey on a 'semi-regular' basis does not outweigh the interest of New York," where the plaintiff was employed, to the claims at issue). On balance, and at this stage of the litigation, the Court finds that the Section 145 factors weigh in favor of applying Pennsylvania law.

---

[10] This point, if alleged, is important because "if [Chinchilla] can establish that the company's decision to fire him was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale." *Calabotta*, 213 A.3d at 229.

#### b.    Section 6 Factors

Section 6 of the Restatement, which outlines universal principles for choice of law issues, provides some additional considerations bearing on the question of which state's law should apply, including interstate comity, the interests of the parties, and the competing interests of the states, among others. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6; *see also P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008) (outlining Section 6 principles).

Here, the Court finds that the Section 6 factors further weigh against the application of New Jersey law. For instance, the interests of comity do not support the application of New Jersey law. Chinchilla alleges that the discriminatory and retaliatory conduct occurred beginning in 2020 while he was working at the Pennsylvania Campus. (*See* Compl. ¶¶ 14-29.) Indeed, at no point in the Complaint does Chinchilla suggest, for example, that he sought assignment at the New Jersey Campus or physically witnessed or endured discriminatory conduct while in New Jersey. *C.f. Calabotta*, 213 A.3d at 227-28 (explaining that most of the factors under Sections 6, 145, and 146 of the Restatement are "heavily influenced by the fact that the new position sought by plaintiff . . . was going to be located in [New Jersey], where the defendant company . . . is based"). Although Chinchilla agreed to transfer to the Pennsylvania Campus, coupled with a promise of a promotion, he does not allege or suggest that the promotion would be at the New Jersey Campus. Notably, "occasional contact with New Jersey as part of [a plaintiff's] employment," such as Chinchilla's transfer back and forth to the New Jersey Campus, "[i]s insufficient to turn those visits into plaintiffs being 'based' in New Jersey for employment purposes." *Schneider v. Sumitomo Corp. of Am.*, No. 09-5094, 2010 WL 2521774, at *2 (D.N.J. June 14, 2010) (quoting *Norenius v. Multaler, Inc.*, No. 449-06, 2008 WL 4162878, at *7 (N.J. Super. Ct. App. Div. Sept.

11, 2008)). As the allegations now stand, the Court also finds that the Section 6 factors likewise weigh in favor of applying Pennsylvania law.

In sum, even considering and accepting as true Chinchilla's allegations that certain conduct underlying his discrimination and retaliation claims occurred in or was based out of New Jersey, the application of the relevant Restatement factors demonstrates that Pennsylvania has the most significant relationship to this matter. At this juncture, the Court concludes that Chinchilla has failed to allege sufficient facts to connect his alleged discrimination and retaliation claims to New Jersey, and thus, he cannot access relief through NJLAD or CEPA. *See Walters*, 2019 WL 7343481, at *5 (holding that NJLAD and CEPA will only apply to out-of-state plaintiffs that have the most significant relationship to New Jersey). For these same reasons, the Court also dismisses Chinchilla's constructive discharge claim (Count IV).[11] The Court will, however, permit Chinchilla an opportunity to amend the Complaint because additional factual allegations, as outlined in Chinchilla's Opposition, may potentially impact this Court's analysis.[12]

---

[11] It is unclear from Chinchilla's Complaint whether his constructive discharge claim is a part of his NJLAD and CEPA claims or is a standalone claim. If, however, Chinchilla asserts that constructive discharge is a standalone claim, the claim fails because it is a form of adverse employment action and not an independent claim. *See Knabe v. Boury Corp.*, 114 F.3d 407, 407 n.1 (3d Cir. 1997).

[12] The Geodis Defendants make several other arguments in their Motion. First, the Geodis Defendants contend that some of Chinchilla's claims are time-barred by the CEPA's one-year statute of limitations. (Geodis Defs.' Moving Br. 28.) Next, the Geodis Defendants contend that Chinchilla's allegations against Geodis America and Geodis USA should be dismissed because Chinchilla fails to allege who his true employer is or facts that could support a finding of joint employment. (*Id.* at 17-20.) Lastly, the Geodis Defendants argue that service as to Geodis America and Geodis USA was improper. (*Id.* at 24.) Because the Court grants the Geodis Defendants' Motion on other grounds, the Court declines to address the Geodis Defendants' other arguments at this juncture.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Chinchilla's Motion to Remand and grants the

Geodis Defendants' Motion to Dismiss. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE